## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 39534

| | |
|---|---|
| STATE OF IDAHO, ) | 2013 Unpublished Opinion No. 664 |
| ) | |
| Plaintiff-Respondent, ) | Filed: September 10, 2013 |
| ) | |
| v. ) | Stephen W. Kenyon, Clerk |
| ) | |
| THOMAS ZACHARY ALEC PAULK, ) | THIS IS AN UNPUBLISHED |
| ) | OPINION AND SHALL NOT |
| Defendant-Appellant. ) | BE CITED AS AUTHORITY |
| ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge.

Judgment of conviction, affirmed; order denying Idaho Criminal Rule 35 motion, affirmed.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Thomas Zachary Alec Paulk appeals from the judgment of conviction entered upon the jury verdict finding him guilty of forcible sexual penetration by use of a foreign object, Idaho Code § 18-6608. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Paulk lived with his girlfriend, Ms. Orme, and her two-year-old daughter, L.B. On the evening at issue, Orme left the house to pick up dinner, leaving Paulk at home to watch L.B. Paulk allegedly became frustrated while changing L.B.'s diaper and placed his finger(s) in her vagina and pressed down with force, causing injury to L.B.'s vagina. Paulk called Orme and told her that L.B. was bleeding. Orme returned home and took L.B. to Mountain View Hospital Ready Care. During the initial examination, the intake nurse asked L.B., "[D]id you get an owie?" L.B. responded, "Zackie did it."

1

After being examined by a doctor, L.B. was sent to the hospital and surgery was performed to repair her injury. The doctor reported the incident to law enforcement, and police officers went to the home to interview Paulk. After telling police officers various stories of how the injury occurred, Paulk eventually admitted to placing his finger in L.B.'s vagina out of anger and pushing down, causing the injury.

Following a jury trial, Paulk was convicted of forcible penetration by a foreign object. The district court imposed a unified term of fifteen years with five years determinate. Paulk filed an Idaho Criminal Rule 35 motion requesting a reduction in his sentence, which the district court denied. Paulk timely appeals.

## II.

## ANALYSIS

Paulk claims: (1) that the district court erred by admitting L.B.'s statement because the statement did not fit within any hearsay exception; (2) that the admittance of L.B.'s statement violated his right to confrontation; (3) that the district court abused its discretion by imposing an excessive sentence; and (4) that the district court abused its discretion in denying his Rule 35 motion.

### A.    Child's Statement

We need not address the admission of L.B.'s statement under either the evidentiary rules or the Confrontation Clause because, even assuming the admission of L.B.'s statement was erroneous, any error was harmless. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the State has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010).

In the instant case, the evidence against Paulk was overwhelming. At trial, the detective who investigated the incident testified that Paulk repeatedly changed his story throughout the investigation. The detective testified that Paulk initially reported that L.B. fell down and hurt herself. Then Paulk changed his story and reported that his knee gave out while changing L.B.'s

diaper and as he was falling, his finger went inside L.B.'s vagina. Later, Paulk reported that after his knee buckled, L.B. started to slide off the bed and he grabbed her and inserted his finger inside her vagina as he pushed her back onto the bed. Finally, Paulk said that L.B. was hurt and crying but would not tell Paulk where she was hurt. Paulk then told a police officer that he became upset "[S]o he began pushing her down on the bed. And his fingers were going inside of her."

The doctor who examined and treated L.B. testified as to his medical conclusions. Specifically, he testified that:

> [T]his type of injury is absolutely indicative of a penetrating trauma for the fact that there was no injury to any of the surrounding structures, and the injury extended so far up into the vagina that there was nothing but a penetration that could have caused that kind of extension into the vagina. And just from the tearing, something had to be penetrated with a lot of force. There had to be quite an exertion of force placed on whatever was penetrated into the vagina.

Further, the doctor testified that Paulk's initial stories could not have resulted in L.B.'s injuries. First, the doctor testified that the injury could not have been an accidental fall because L.B. did not have injuries to the surrounding tissue or structure. Second, the doctor testified that it was illogical to conclude that L.B.'s injury resulted from Paulk accidentally falling and inserting his hand in L.B.'s vagina. Third, the doctor testified that the injury could not have resulted from Paulk catching L.B. as she slid off the bed because L.B. did not weigh enough to exert the amount of force required for such an extensive injury. However, the doctor did testify that the injury could have resulted from Paulk inserting his fingers inside L.B.'s vagina and pushing down out of anger.

The pediatric forensic nurse's testimony concurred with the doctor's testimony and indicated that Paulk's admission of inserting his fingers in L.B.'s vagina and pushing down out of anger was the only possible explanation based on the location and severity of the injury. Moreover, the testimonies of a pediatrician and a professor of pediatrics were also consistent with the doctor's testimony. Additionally, testimony was presented indicating that the only individuals present at the home when L.B.'s injury occurred was Paulk, L.B., L.B.'s five-year-old sister, and an infant.

Based on the foregoing, we conclude that L.B.'s statement did not contribute to the jury's verdict. Paulk's own admission that he inserted his fingers in L.B.'s vagina and pushed down,

3

combined with the testimonies of medical experts corroborating this version of the events, overwhelmingly established evidence of Paulk's guilt. Therefore, the jury would have reached the same verdict, beyond a reasonable doubt, even absent L.B.'s statement. Accordingly, any error resulting from the admission of the statement was harmless.

**B.     Excessive Sentence**

Paulk claims that the district court imposed an excessively harsh sentence "in light of the numerous mitigating circumstances present in his case, including his remorse, mental health issues, history of traumatic brain injury, family support, and lack of any prior felony convictions."[1]     An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Here, Paulk points to several mitigating factors to support his claim. Paulk asserts that he suffers from "a psychological disorder, Alexithymia, resulting from traumatic brain injury that

---

[1]     Paulk was originally convicted of lewd conduct and forcible penetration with a foreign object. The district court imposed a unified term of fifteen years with five years determinate for each conviction. However, the State filed a motion to dismiss the lewd conduct charge after a polygraph examination indicated that Paulk did not commit the act for the purpose of sexual gratification and the district court granted the motion. The district court vacated the sentences and resentenced Paulk to a unified term of fifteen years with five years determinate for the forcible penetration conviction.

4

prevents him from adequately showing his emotions," including his remorse. He also asserts that he has strong family support and has had no prior felonies. Additionally, Paulk points to the remorse he demonstrated and was noted in the presentence investigation report (PSI). Our review of the record indicates that the district court took careful consideration of the mitigating factors as well as the objectives of sentencing. The court also considered the violent nature of the crime and recalled that the injury was "among the worst" the hospital had seen, as Paulk's action created a laceration from L.B.'s vagina to nearly her anal opening. The court was also concerned with Paulk's description of the crime as an "accident," rather than admitting that it was a violent, willful act. After considering the factors, the court stated that it "imposed a sentence that it believed accounted for those mitigating factors." The court also noted that the sentence was less than the maximum sentence and less than the State's recommended sentence. Based on the foregoing, we conclude that the district court did not abuse its discretion by imposing Paulk's sentence.

## C.     Rule 35 Motion

Paulk claims that new evidence, accompanied with the mitigating factors discussed above, demonstrates that his underlying sentence is excessive. A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Gill*, 150 Idaho 183, 186, 244 P.3d 1269, 1272 (Ct. App. 2010). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984).

At the hearing on the Rule 35 motion, defense counsel informed the district court that Paulk was not present because he was incarcerated with the Department of Correction in Boise. Defense counsel also informed the court that Paulk had been threatened and attacked while incarcerated. Defense counsel then proceeded to argue the Rule 35 motion, arguing that Paulk's sentence should be reduced because his treatment while incarcerated would focus on treatment for sexual deviancy, rather than treatment for his anger problems. The district court denied the

motion, finding, among other things, that Paulk did commit a sexually-abusive crime and would have to participate in sex offender treatment.

On appeal, Paulk argues that defense counsel's notification to the district court that Paulk was receiving threats and was attacked while incarcerated constitutes new evidence presented to the district court in support of his Rule 35 motion. However, this information was presented only by representations of counsel and not through any admissible evidence. Our reading of the transcript indicates that defense counsel was informing the court of the threats and attack for the purpose of the record and not as argument for the Rule 35 motion. In fact, immediately after commenting about the attack, defense counsel stated, "We do not have new evidence to present to the Court. I will let the Court know that up front." Additionally, after reviewing the record, we conclude that the district court properly considered defense counsel's argument and determined that the sentence was a "fair sentence that accounts for those very things that the defense argues today." Accordingly, we cannot say that the district court abused its discretion in denying Paulk's Rule 35 motion.

### III.

### CONCLUSION

Paulk has failed to demonstrate reversible error relative to L.B.'s statement. Additionally, we conclude that the district court did not abuse its discretion by imposing Paulk's sentence or by denying his Rule 35 motion. Accordingly, Paulk's judgment of conviction and the district court's order denying his Rule 35 motion are affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**

6